1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   THOMAS LE'ROY HENNAGAN JR.,

11              Petitioner,                    No. CIV S-04-1900 JAM DAD P

12        vs.

13   K. PROSPER, Warden,

14              Respondent.            FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18   entered against him on January 14, 2000 in the Sacramento County Superior Court on charges of

19   vehicle theft and receiving stolen property.  He seeks relief on the grounds that: (1) his trial and

20   appellate counsel rendered ineffective assistance; and (2) the trial court committed prejudicial

21   error by denying his motion for new trial and admitting into evidence his prior conviction for

22   vehicle theft.  Upon careful consideration of the record and the applicable law, the undersigned

23   will recommend that petitioner's application for habeas corpus relief be denied.

24   /////

25   /////

26   /////

1

PROCEDURAL AND FACTUAL BACKGROUND[1]

A jury convicted defendant of vehicle theft (Veh. Code, § 10851, subd. (a)), resisting an officer, a misdemeanor (Pen. Code, § 148, subd. (a)(1)), and receiving stolen property (Pen. Code, § 496, subd. (a)).  The court found that defendant had a prior vehicle theft conviction (§ 666.5, subd. (a)) and a prior felony conviction (first degree burglary) within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12).[2]  The court sentenced defendant to state prison for an aggregate term of eight years.

* * *

On September 29, 1999, at approximately 6:00 p.m., Sharon Harper left her Nissan Pulsar in her driveway.  The car was locked, but the keys were in the ignition.  The next morning, the car was gone.

On October 4, 1999, at 1:53 a.m., while on patrol in the Oak Park area, Sacramento Police Officer Daniel Nutley observed a car - a Nissan Pulsar - pulling out of an alley.  As Officer Nutley drove by, he made eye contact with the driver, the defendant.  Officer Nutley became suspicious when defendant hesitated in driving the car out of the alley.  Accordingly, the officer made a U-turn.

Defendant then pulled the car out of the alley and accelerated to 35 miles per hour in a posted 25-mile-per-hour zone.  The officer sped to catch up, observing defendant running stop signs and making unsafe turns.  Finally, defendant came to a stop at a dead-end street, got out of the car, and started to walk away.  Officer Nutley ordered defendant to stop, but defendant continued to walk away.  After being ordered twice more to stop, defendant started to run.  Officer Nutley radioed dispatch and chased after defendant.  The officer eventually caught up with, and arrested, defendant.

When the officer searched the car, he could not find any keys.  No keys were found in the area either.  But the car did not appear to have been hotwired.  A bicycle was found in the back seat of the car, with its front tire removed.  A windbreaker jacket was on the front passenger seat; it had a rock cocaine pipe in the pocket.

At 2:00 a.m. on October 4, Harper was advised that her car had been recovered.  She described the condition of her car as "pretty

---

[1]  The following summary is drawn from the March 25, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-4, lodged in this court on February 9, 2005 as Lodged Document 3.

[2]  Unless otherwise designated, all further statutory references are to the Penal Code.

trashed" and said that the dashboard was damaged where someone had tried to pry out the radio.

Defendant testified at trial. He explained that on October 3, he had ridden his bicycle to a location to buy rock cocaine from "JD." Defendant put the rocks in a plastic baggie. When he started to leave, he remembered that the tire on his bike was going flat and asked to borrow JD's car. Indeed, defendant did not want to ride or walk his bike home because he was on searchable probation; he was concerned that he would be stopped by the police, who heavily patrolled the area. JD agreed to loan defendant the car, which defendant suspected was a "rent-a-bucket," that is, a car that someone had loaned to JD in exchange for some drugs. Defendant did not suspect the car had been stolen. And JD assured him that the car was a rent-a-bucket. Although defendant noticed some damage to the car, he denied noticing any damage to the dashboard. The key to the car was in the ignition.

Defendant testified that after he was spotted by the officer, he fled because he had rock cocaine. Defendant removed the rocks from the baggie, discarded the baggie on the floor of the car, and then threw the rock cocaine along with the ignition key as he fled from the officer. When the car was searched, defendant denied that the jacket belonged to him because he knew the cocaine pipe was in the pocket. And when the officer found the empty baggie, defendant ignored the officer's question, "What have we here?"

When interviewed at the jail, defendant gave the officer a different story. He told the officer that he had fled because his license had expired and he had a bad record, which included a 1998 conviction for vehicle theft. Defendant testified that he did not tell the officer that he had bought cocaine from JD because he did not want the officer to return to the scene to look for the discarded rock cocaine. And defendant denied that he had told Officer Nutley that when he borrowed the car, JD had advised him that the car was not stolen.

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. <u>See</u> Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. <u>See</u> Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas

1  corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377

2  (1972).

3             This action is governed by the Antiterrorism and Effective Death Penalty Act of

4  1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d

5  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

6  habeas corpus relief:

7                 An application for a writ of habeas corpus on behalf of a
                person in custody pursuant to the judgment of a State court shall
8                not be granted with respect to any claim that was adjudicated on
                the merits in State court proceedings unless the adjudication of the
9                claim -

10                 (1) resulted in a decision that was contrary to, or involved
                an unreasonable application of, clearly established Federal law, as
11                determined by the Supreme Court of the United States; or

12                 (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the
13                State court proceeding.

14  <u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362

15  (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).

16             The court looks to the last reasoned state court decision as the basis for the state

17  court judgment.  <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

18  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

19  federal habeas court independently reviews the record to determine whether habeas corpus relief

20  is available under section 2254(d).  <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003);

21  <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

22  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

23  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

24  de novo.  <u>Nulph v. Cook</u>, 333 F.3d 1052, 1056 (9th Cir. 2003); <u>Pirtle v. Morgan</u>, 313 F.3d 1160,

25  1167 (9th Cir. 2002).

26  /////

II.  Petitioner's Claims

    A.  Ineffective Assistance of Counsel

        Petitioner raises numerous claims of ineffective assistance of trial and appellate counsel.  After setting the forth the applicable legal standards, the court will evaluate these claims in turn below.

    1.  Legal Standards

        The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  466 U.S. at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

/////

1    Defense counsel has a "duty to make reasonable investigations or to make a

2   reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at

3   691. "This includes a duty to . . . investigate and introduce into evidence records that

4   demonstrate factual innocence, or that raise sufficient doubt on that question to undermine

5   confidence in the verdict." Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citing Hart v.

6   Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999)).   In this regard, it has been recognized that "the

7   adversarial process will not function normally unless the defense team has done a proper

8   investigation." Siripongs v. Calderon (Siripongs II), 133 F.3d 732, 734 (9th Cir. 1998) (citing

9   Kimmelman v. Morrison, 477 U.S. 365, 384 (1986)).   Therefore, counsel must, "at a minimum,

10  conduct a reasonable investigation enabling him to make informed decisions about how best to

11  represent his client." Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting

12  Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted).

13  On the other hand, where an attorney has consciously decided not to conduct further investigation

14  because of reasonable tactical evaluations, his or her performance is not constitutionally

15  deficient. See Siripongs II, 133 F.3d at 734; Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.

16  1998); Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995). "A decision not to investigate thus

17  'must be directly assessed for reasonableness in all the circumstances.'" Wiggins, 539 U.S. at

18  533 (quoting Strickland, 466 U.S. at 691). See also Kimmelman, 477 U.S. at 385 (counsel

19  "neither investigated, nor made a reasonable decision not to investigate"); Babbitt, 151 F.3d at

20  1173-74. A reviewing court must "examine the reasonableness of counsel's conduct 'as of the

21  time of counsel's conduct.'" United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990)

22  (quoting Strickland, 466 U.S. at 690). Furthermore, "'ineffective assistance claims based on a

23  duty to investigate must be considered in light of the strength of the government's case.'" Bragg,

24  242 F.3d at 1088 (quoting Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986)).

25    In assessing an ineffective assistance of counsel claim "[t]here is a strong

26  presumption that counsel's performance falls within the 'wide range of professional assistance.'"

6

1  Kimmelman, 477 U.S. at 381 (quoting Strickland, 466 U.S. at 689).  There is in addition a strong

2  presumption that counsel "exercised acceptable professional judgment in all significant decisions

3  made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

4         2.  Trial Counsel

5             a.  Failure to File a Motion to Suppress

6        Petitioner first claims that his trial counsel rendered ineffective assistance when

7  he failed to file a motion to exclude evidence regarding the stolen vehicle on the grounds that law

8  enforcement improperly returned the vehicle to its owner before the defense had a chance to

9  inspect it.  (Pet. at 5, Traverse at 31.)  Petitioner claims that the failure of the police to preserve

10  the vehicle for purposes of inspection violated various provisions of the California Vehicle and

11  Penal Codes, the California Constitution and the Fourteenth Amendment to the United States

12  Constitution.  (Traverse at 15-31.)  He contends that "the alleged stolen motor vehicle was

13  potentially exculpatory in nature" because it might have uncovered evidence that he in fact

14  obtained the vehicle from JD, its lawful possessor.  (Id.)

15        Petitioner raised this claim in a petition for a writ of habeas corpus filed in the

16  Sacramento County Superior Court on December 24, 2003, in a subsequent petition for writ of

17  habeas corpus filed in the California Court of Appeal on February 24, 2004, and in a petition for

18  writ of habeas corpus filed in the California Supreme Court on September 2, 2004.  (Lodged

19  Docs. 24, 26.)[3]  All three courts rejected the claim on procedural grounds.  (Lodged Docs. 23, 25,

20  27.)  Accordingly, this court must decide petitioner's claim de novo.  Nulph, 333 F.3d at 1056.

21        Due process requires that the prosecution disclose exculpatory evidence within its

22  possession.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  However, a failure to preserve evidence

23  violates a defendant's right to due process only if the unavailable evidence possessed

24  "exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature

25

26       [3] Respondent has not lodged petitioner's December 24, 2003 petition with this court.
However, the Sacramento County Superior Court's decision describes the claims raised therein.

1   that the defendant would be unable to obtain comparable evidence by other reasonably available

2   means." California v. Trombetta, 467 U.S. 479, 489 (1984).  See also Cooper v. Calderon, 255

3   F.3d 1104, 1113 (9th Cir. 2001).  A defendant must also demonstrate that the police acted in bad

4   faith in failing to preserve potentially useful evidence.  Arizona v. Youngblood, 488 U.S. 51, 58

5   (1988); Cooper, 255 F.3d at 1113; see also Guam v. Muna, 999 F.2d 397, 400 (9th Cir. 1993).

6   The presence or absence of bad faith turns on the government's knowledge of the apparent

7   exculpatory value of the evidence at the time it was lost or destroyed.  Youngblood, 488 U.S. at

8   56-57 n.*; see also United States v. Cooper, 983 F.2d 928, 931 (9th Cir. 1993).

9          Whether the police violated state statutory or constitutional law in failing to

10  preserve the stolen vehicle for inspection is not cognizable in this federal habeas corpus

11  proceeding.  Middleton, 768 F.2d at 1085.  At issue here is whether petitioner's trial counsel

12  rendered ineffective assistance by failing to pursue a motion to suppress evidence concerning the

13  stolen vehicle on the basis of police misconduct.  The court concludes that he did not.

14         Petitioner has failed to demonstrate that the vehicle possessed exculpatory value

15  that was apparent before it was given back to the owner, that the defense was unable to obtain

16  evidence regarding the vehicle by other means, or that the police acted in bad faith in failing to

17  retain the vehicle so that the defense could inspect it.  The vehicle was not destroyed; it was

18  merely given back to the owner.  If petitioner's trial counsel believed the vehicle possessed

19  exculpatory value, he could have made arrangements to inspect it.  Further, there is no evidence

20  in the record that there was any potentially exculpatory evidence attached to the vehicle or that

21  the police acted in bad faith when they transferred it back to its owner.  Under these

22  circumstances, a motion to suppress evidence regarding the stolen vehicle would have been

23  meritless.  Counsel's failure to present a meritless argument does not constitute ineffective

24  assistance.  Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing Boag v. Raines, 769

25  F.2d 1341, 1344 (9th Cir. 1985)); see also Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996)

26  /////

8

1  ("the failure to take a futile action can never be deficient performance").  Accordingly, petitioner

2  is not entitled to relief on this claim.

3              b.  Failure to "move for acquittal"

4         Petitioner's next claim is that his trial counsel rendered ineffective assistance by

5  failing to "move for acquittal" on the grounds of insufficient evidence following the presentation

6  of the prosecution's case.  (Pet. at 5.)  Petitioner raised this claim for the first time in a petition

7  for a writ of habeas corpus filed in the Sacramento County Superior Court on December 24,

8  2003.  (Lodged Doc. 23.)  The Superior Court denied the claim on procedural grounds and on the

9  merits.  Specifically, the Superior Court concluded that "a [motion for acquittal] would have

10  been denied had it been made, as the evidence presented at trial was sufficient to allow the jury to

11  decide the guilt or innocence of petitioner on the charges."  (Id. at consecutive p. 2.)  The

12  California Court of Appeal and California Supreme Court subsequently denied relief as to this

13  claim on procedural grounds.  (Lodged Docs. 25, 27.)

14         As explained above, petitioner was convicted of vehicle theft, in violation of

15  California Vehicle Code § 10851(a) and receiving stolen property, in violation of Caifornia Penal

16  Code § 496(a).   California Vehicle Code § 10851(a) provides that "[a]ny person who drives or

17  takes a vehicle not his or her own, without the consent of the owner thereof, and with intent

18  either to permanently or temporarily deprive the owner thereof of his or her title to or possession

19  of the vehicle . . ." is guilty of vehicle theft.  With respect to his conviction under this code

20  section, petitioner argues that the evidence was insufficient to demonstrate he had the intent to

21  deprive the owner of her title to or possession of the vehicle.  (Traverse at 36-38.)  California

22  Penal Code § 496(a) provides that "[e]very person who buys or receives any property that has

23  been stolen or that has been obtained in any manner constituting theft or extortion, knowing the

24  property to be so stolen or obtained" is guilty of receiving stolen property.  With respect to his

25  conviction under this code section, petitioner contends that the evidence failed to establish he

26  knew the vehicle had been stolen.  (Id. at 38-42.)

1    Pursuant to California law, "[a] trial court should deny a motion for acquittal

2 under [California Penal Code] section 1118.1 when there is any substantial evidence, including

3 all reasonable inferences to be drawn from the evidence, of the existence of each element of the

4 offense charged." People v. Mendoza, 24 Cal. 4th 130, 175 (2000). "In short, the trial court

5 must determine whether the prosecution has established a prima facie case" and must determine

6 "that the prosecution in its case-in-chief presented sufficient evidence to warrant the submission

7 of the [case] to the jury." People v. Ainsworth, 45 Cal. 3d 984, 1022 (1988).

8    Petitioner has failed to demonstrate prejudice with respect to his claim that his

9 trial counsel was ineffective in failing to make a motion for acquittal pursuant to California Penal

10 Code § 1118.1. The evidence at trial established that petitioner was driving a stolen car, that he

11 drove suspiciously after seeing a police officer, and that he ran from the officer after being

12 ordered to stay by the car. This evidence was sufficient to allow a rational juror to infer that

13 petitioner was driving a stolen vehicle, which he obtained with the intent to deprive the owner of

14 its possession. Whether the evidence could also support petitioner's claim that he evaded the

15 police because he had illegal drugs in his possession is not dispositive of this claim. The

16 evidence was sufficient to allow the case to proceed to the jury to determine whether the

17 elements of the offenses charged against petitioner had been proven beyond a reasonable doubt.

18 See People v. O'Dell, 153 Cal. App. 4th 1569, 1576 (2007) (conduct tending to show guilt

19 includes evidence that the defendant fled from the police); In re Lynette G., 54 Cal. App. 3d

20 1087, 1095 (1976) (same). A motion for acquittal under these circumstances would have been

21 futile. Accordingly, petitioner is not entitled to relief on this claim that his trial counsel provided

22 ineffective assistance due to his failure to move for petitioner's acquittal.

23    c. Admission into Evidence of a Prior Uncharged Offense

24    Petitioner's next claim is that his trial counsel rendered ineffective assistance by

25 failing to object to the admission into evidence of petitioner's prior arrest for violation of

26 California Health and Safety Code § 11364 (possession of drug paraphernalia). (Pet. at 6.)

10

1   Without citation to the record, petitioner states that "the testimony of the arresting officer was

2   admitted into evidence in lieu of the arrest report." (Traverse at 43.)  Petitioner apparently claims

3   that evidence of his prior arrest for possession of drug paraphernalia was irrelevant and

4   prejudicial. (Traverse at 42-48.)  Respondent informs the court that he has been unable to find

5   evidence in the record that any such evidence was admitted.  (Answer at 28 n.1.)  Moreover,

6   respondent argues, even if such evidence was received by the jury it was not prejudicial in light

7   of the defense presented by petitioner that he attempted to evade the police because he was in

8   possession of illegal drugs, and petitioner's own testimony that he was a long-time drug user.

9   (Answer at 27-28.)  Petitioner counters that the improperly admitted evidence of his prior drug

10   arrest "opened the door for the prosecutor to explore Petitioner's history of being involved in the

11   drug culture." (Traverse at 43-44.)

12         Petitioner raised this claim in his petition for a writ of habeas corpus filed in the

13   Sacramento County Superior Court on December 24, 2003, in a subsequent petition for writ of

14   habeas corpus filed in the California Court of Appeal on February 24, 2004, and in a petition for

15   writ of habeas corpus filed in the California Supreme Court on September 2, 2004. (Lodged

16   Docs. 24, 26.)  All three courts rejected the claim on procedural grounds. (Lodged Docs. 23, 25,

17   27.)  Accordingly, the court must decide this claim de novo.  Nulph, 333 F.3d at 1056.

18         The court has reviewed the entire transcript of petitioner's four day long trial as

19   well as the Clerk's Transcript reflecting all exhibits received into evidence at that trial.  The court

20   is unable to identify in that record any evidence relating to petitioner's prior arrest for possession

21   of drug paraphernalia.  Nor has petitioner cited to any part of the state court record in support of

22   his claim in this regard.  For this reason alone petitioner has failed to establish that he is entitled

23   to relief on his ineffective assistance of counsel claim based on the alleged failure to object to

24   evidence of his prior arrest.

25         Even if evidence of petitioner's prior arrest for possession of drug paraphernalia

26   was admitted at his trial, petitioner has failed to establish prejudice with respect to this claim of

1    ineffective assistance of counsel.  The state court record reflects that petitioner took the stand in

2    his own defense and testified that he fled from the police because he was afraid he would be

3    arrested for possession of drugs.  (Reporter's Transcript (RT) at 171-73.)  He also testified that

4    he had been using cocaine, including "freebasing cocaine," for approximately fifteen years, and

5    that he was an "expert" in the area of "the culture of rock cocaine dealers and users."  (Id. at 147-

6    48.)  Petitioner's defense necessarily involved evidence that he used and was frequently in

7    possession of illegal drugs.  Under these circumstances, evidence that petitioner had previously

8    been arrested for possession of drug paraphernalia would not have been unduly prejudicial to his

9    defense.  Petitioner has failed to show that the result of the proceedings would have been

10   different if his trial counsel had raised an objection to the admission of evidence of petitioner's

11   prior arrest.  Accordingly, he is not entitled to relief on this claim.

12                            d.  CALJIC No. 2.23

13           Petitioner's next claim is that his trial counsel rendered ineffective assistance by

14   failing to object to "additional instructions to CALJIC 2.23 to cure the prejudicial effect of

15   admitting petitioner's unsanitized prior vehicle theft conviction."  (Pet. at 6.)

16           Petitioner raised this claim in his petition for a writ of habeas corpus filed in the

17   Superior Court on December 24, 2003, in a subsequent petition for writ of habeas corpus filed in

18   the California Court of Appeal on February 24, 2004, and in a petition for writ of habeas corpus

19   filed in the California Supreme Court on September 2, 2004.  (Lodged Docs. 24, 26.)  All three

20   courts rejected the claim on procedural grounds.  (Lodged Docs. 23, 25, 27.)  Accordingly, the

21   court must decide this claim de novo.  Nulph, 333 F.3d at 1056.

22           The state court record reflects that petitioner admitted on cross-examination that

23   he had been convicted of "three felony theft-related convictions," including one for "auto theft."

24   /////

25   /////

26   /////

(RT at 182.)  Subsequently, petitioner's jury was instructed with CALJIC No. 2.23,[4] modified by

the addition of the following language:

> The fact of any prior convictions of the defendant may not be
> considered by you as evidence that the defendant has a disposition
> to commit crimes or that he is more likely to be guilty than not
> guilty of these charges.  Such evidence may only be considered in
> determining defendant's credibility as a witness as stated above.

(Clerk's Transcript on Appeal (CT) at 50.)  Petitioner is apparently claiming that his trial counsel

rendered ineffective assistance by failing to object to the above-quoted addition to CALJIC No.

2.23.  Petitioner does not elaborate on the nature of the objection he believes his counsel should

have made, nor does he describe any prejudice he suffered as a result of the trial court's

modification of CALJIC No. 2.23.  After a review of the record, this court concludes that the

giving of CALJIC No. 2.23, including the modified language, did not render petitioner's trial

fundamentally unfair.  Petitioner's vague and cursory claim fails to establish that his trial counsel

rendered ineffective assistance in failing to object to this jury instruction.  See James v. Borg, 24

F.3d 20, 26 (9th Cir. 1994) ("conclusory allegations which are not supported by a statement of

specific facts do not warrant habeas relief").  Accordingly, petitioner is not entitled to relief on

this claim.

  e. Failure to Advise

Petitioner next claims that his trial counsel rendered ineffective assistance by

failing to advise him of his "Boykin Thal [sic]" rights[5] to "remain silent and confront his

---

[4]  CALJIC No. 2.23 provides:

> The fact that a witness has been convicted of a felony, if this is a
> fact, may be considered by you only for the purpose of determining
> the believability of that witness.  The fact of a conviction does not
> necessarily destroy or impair a witness's believability.  It is one of
> the circumstances that you may consider in weighing the testimony
> of that witness.

[5]  Petitioner is referring to the decisions in Boykin v. Alabama, 395 U.S. 238 (1969) and
In re Tahl, 1 Cal. 3d 122 (1969).

1   accusers" at the time he counseled petitioner to admit that he suffered the prior vehicle theft

2   conviction or to object when the trial court failed to give the same advisements.  (Pet. at 6A.)

3   Petitioner raised this claim in his petition for a writ of habeas corpus filed in the Superior Court

4   on December 24, 2003, in a subsequent petition for writ of habeas corpus filed in the California

5   Court of Appeal on February 24, 2004, and in a petition for writ of habeas corpus filed in the

6   California Supreme Court on September 2, 2004.  (Lodged Docs. 23, 24, 26.)  All three courts

7   rejected the claim on procedural grounds.  (Lodged Docs. 23, 25, 27.)  Accordingly, the court

8   must decide this claim de novo.  Nulph, 333 F.3d at 1056.

9          A review of the state court record reflects that petitioner admitted the allegation

10  that he suffered a prior conviction for vehicle theft.  (RT at 22.)  This admission came after a

11  lengthy colloquy in which the trial court informed petitioner of the sentencing ramifications of

12  admitting the prior conviction and advised him that he had a right to a jury trial and "all the other

13  trial rights," and that he could "present whatever evidence you have in defense against the

14  priors."  (Id. at 14-23.)  The record also reflects that petitioner's counsel discussed with petitioner

15  the advisability of waiving jury trial on the prior conviction allegations and that petitioner agreed

16  to do so.  (Id. at 19.)

17          In Boykin v. Alabama, 395 U.S. 238 (1969), the United States Supreme Court

18  held that the record must affirmatively show that a criminal defendant's guilty plea is intelligent

19  and voluntary.  395 U.S. at 242-43.  The Supreme Court noted that three important federal

20  constitutional rights are involved in the context of a guilty plea – the privilege against

21  compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers –

22  and concluded that a court could not "presume a waiver of these three important federal rights

23  from a silent record."  Boykin,395 U.S. at 243.  The United States Supreme Court does not

24  require explicit admonitions on each of these three constitutional rights, but rather asks "whether

25  the plea represents a voluntary and intelligent course among the alternative courses of action

26  open to the defendant."  North Carolina v. Alford, 400 U.S. 25, 32 (1970).  Similarly, in 1992,

1    the California Supreme Court held that the pertinent inquiry when considering the

2    constitutionality of a guilty plea is whether "the record affirmatively shows that [the admission]

3    is voluntary and intelligent under the totality of the circumstances " People v. Howard, 1 Cal. 4th

4    1132 1175 (1992).  Accordingly, at the time of petitioner's trial, California law "was shifted from

5    whether the defendant received express rights advisements, and expressly waived them, to

6    whether the defendant's admission was intelligent and voluntary because it was given with an

7    understanding of the rights waived." People v. Mosby, 33 Cal. 4th 353, 361 (2004).

8           Assuming arguendo that Boykin applies in this context, the record as a whole

9    reflects that petitioner's admission of the prior conviction allegation was intelligent and

10   voluntary.  Petitioner was advised that he did not have to admit the prior conviction but could

11   have a jury or court trial.  Petitioner had experience with the criminal justice system, having pled

12   guilty in 1993 and 1998 to criminal theft charges.  (Traverse at 59.)  "A defendant's prior

13   experience with the criminal justice system [is] relevant to the question of whether he knowingly

14   waived constitutional rights." Parke v. Raley, 506 U.S. 20, 37 (1992).  Petitioner was also fully

15   informed about the sentencing consequences of admitting the prior conviction and was informed

16   that he retained "all the other trial rights," including the right to present evidence in his defense.

17   After a review of the record, it is clear that petitioner's admission of the prior conviction

18   allegation was intelligent and voluntary despite the fact that he was not specifically advised of his

19   right to remain silent and confront his accusers.  Under these circumstances, trial counsel's

20   failure, if any, to advise petitioner of these constitutional rights did not result in any prejudice.

21   Accordingly, petitioner is not entitled to relief on this claim.[6]

22   /////

23

24      [6] In the traverse, petitioner appears to be raising a claim that the trial court itself violated
his constitutional rights in failing to advise him of his constitutional rights to confront his

25   accusers and remain silent.  (Traverse at 56.)  This claim is not raised in the petition and, as
previously noted, "[a] Traverse is not the proper pleading to raise additional grounds for relief."

26   Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994).  Accordingly, any such claim
should be rejected.

1                f. <u>Failure to Properly Challenge the Prior Conviction Allegations</u>

2                Petitioner also claims that his trial counsel rendered ineffective assistance by

3 failing to "investigate the prior convictions." (Pet. at 6A.) Petitioner explains:

4                Trial counsel failed to challenge the sufficiency of the evidence in
the court trial of petitioner's prior convictions. The certified
5                records were insufficient to identify petitioner as the person who
suffered the prior convictions. Trial counsel failed to present
6                evidence to challenge the validity of the prior convictions.

7 (<u>Id.</u>)

8                Petitioner raised this claim for the first time in his December 24, 2003 petition for

9 a writ of habeas corpus filed in the Sacramento County Superior Court. (Lodged Doc. No. 22.)

10 The Superior Court denied relief on the claim, reasoning as follows:

11                Petitioner next claims that trial counsel rendered ineffective
assistance of counsel in failing to investigate and challenge the
12                validity of his prior conviction in Sacramento County Superior
Court Case No. 97F08560, that had been based on a no contest
13                plea, through a motion to strike the prior based on ineffective
assistance of trial counsel for the prior conviction. The claim is
14                barred by <u>Clark</u>, and petitioner fails to show that an exception to
the bar applies. Regardless, the claim is meritless, as the trial
15                counsel could not have brought a motion to strike the prior on
grounds of ineffective assistance of counsel on the prior conviction
16                (see <u>Garcia v. Superior Court</u> (1997) 14 Cal.4th 953 [noncapital
defendants are precluded from moving to strike prior convictions
17                on ground of ineffective assistance of counsel in prior
proceeding]). Nor does petitioner show that any proper collateral
18                attack on his no contest plea in the prior case would have been
successful, as he does not set forth any ground or attach any
19                reasonably available documentary evidence to show that his plea
was invalid for any reason. Thus, the claim fails in any event,
20                under <u>Swain</u>, <u>Harris</u>, and <u>Bower</u>.

21                Petitioner next claims that trial counsel was ineffective in failing to
challenge the sufficiency of the evidence in the court trial of his
22                prior convictions. The claim is barred by <u>Clark</u>, and petitioner fails
to show that an exception to the bar applies. Regardless, the claim
23                fails on its merits. Petitioner claims that because he served 127
days in county jail instead of a prison sentence for his prior offense
24                that somehow that renders the prior first degree burglary conviction
not one of a serious felony for "strike prior" purposes. Petitioner is
25                incorrect as his prior conviction was of a straight felony, rather
than a "wobbler," and his sentence for that case did not affect the
26                "strike" status of the prior conviction (<u>see generally</u> Penal Code §§

16

667(d)(1), 1170.12(b)(1)).  Petitioner also fails to show that the documentary evidence submitted to the court on the prior convictions failed to establish that he was the person in the prior convictions.  Thus, the claims [sic] fails in any event, under <u>Swain</u>, <u>Harris</u>, and <u>Bower</u>.

Petitioner next claims that trial counsel was ineffective in failing to present evidence to challenge the validity of the prior convictions.  The claim is barred by <u>Clark</u>, and petitioner fails to show that an exception to the bar applies.  Regardless, the claim is meritless, as trial counsel could not introduce the evidence petitioner claims should have been introduced, as that was beyond the record at the trial on the truth of the prior convictions and therefore inadmissible (<u>see People v. Bartow</u> (1996) 46 Cal. App.4th 1573.)  The claim therefore fails in any event, under <u>Bower</u>.

(Lodged Doc. 23 at consecutive pgs. 4-5.)

Petitioner has failed to demonstrate that the state court's rejection of this claim is contrary to or an unreasonable application of <u>Strickland</u>.  There is no evidence before this court that petitioner is not the person who suffered the prior convictions alleged in the information or that his trial counsel rendered ineffective assistance in failing to challenge the validity of his prior convictions.  Accordingly, relief should be denied as to this claim as well.

g.  <u>Failure to Investigate, Prepare, and Meet with Petitioner</u>

Petitioner's next claim is that his trial counsel "failed to investigate the case; failed to locate and interview witnesses; failed to subpoena witnesses; failed to present evidence at trial; and failed to meet with petitioner to develop a trial strategy."  (Pet. at 6A.)  In its decision denying petitioner's December 24, 2003 habeas petition, the Sacramento County Superior Court denied relief on this claim for the following reasons:

Petitioner fails to attach any reasonably available documentary evidence, such as affidavits from witnesses not presented at trial, attesting to what they would have testified to had they been called as witnesses that would show <u>unerringly</u> that petitioner is factually innocent.  Indeed, petitioner fails to attach any reasonably available documentary evidence at all, as to what trial counsel could have presented at trial but did not, that was even reasonably likely to render a different outcome.  As such, the claim fails in any event, under <u>Strickland v. Washington</u> (1984) 466 U.S. 668 and <u>Bower</u>.

(Lodged Doc. 23 at consecutive p. 5.)

17

1        On appeal, petitioner raised numerous similar claims regarding his trial counsel's

2   performance.  The California Court of Appeal responded to these claims as follows:

3              We need not recount all of defendant's letters to the court after his
               conviction, complaining of his counsel's ineffectiveness.  Suffice it
4              to say that defendant filed letters dated January 21, 2000, February
               2, 2000, February 4, 2000 (two letters), February 5, 2000, February
5              8, 2000, and February 20, 2000.

6              In the letter dated February 5, 2000, defendant requested a new
               trial based on ineffective assistance of counsel, complaining,
7              among other things, that his counsel should have offered as
               evidence the bicycle with its flat tire; that his counsel failed to
8              locate and subpoena "JD"; that counsel did not respond to his
               phone calls or letters, or file motions; and that the only proper
9              remedy was a new trial with new counsel.

10             In his letter dated February 20, 2000, entitled "Notice of Motion to
               Remove Counsel (Marsden motion)," defendant complained,
11             among other things, about his counsel's limited consultation with
               him; his advice that he testify at trial; his failure to investigate and
12             document defendant's version of events; his failure to file a motion
               to set aside the strike conviction; and his failure to present
13             evidence that two days after the car was stolen, defendant had had
               contact with an officer while riding a bicycle (thereby purportedly
14             proving that he did not steal the car).  Defendant requested that his
               counsel "be relieved as counsel immediately."
15
               At sentencing on March 17, 2000, the trial court observed that
16             defendant "has submitted numerous letters and documents to the
               Court which I started to read as they were coming in.  I
17             discontinued my reading.  It all is by my account 105 pages of
               letters, motions, documents, double paged, double sided, single
18             line, and very extensive.  A lot of it dealing with arguments
               concerning his relationship with his attorney.  So we'll address
19             those first...."

20             The court then asked Mr. Herrera if he had discussed "the issues"
               with defendant.  Herrera responded that he had met with defendant
21             the day before, but that defendant had "got[ten] very upset with
               [Herrera] and left the interview room."
22
               The court then asked Herrera to "state what you want to for the
23             record [ ] concerning those complaints about why you didn't call
               certain people, didn't do certain things, and the issue about him
24             testifying.  I guess one of his complaints is he says he testified and
               shouldn't have testified because that turned out to be a detriment."
25
               Herrera confirmed that he had advised defendant to testify in order
26             to explain that he ran from the officer because he had rock cocaine,

                                            18

not because he had a stolen car.  Herrera thought that that was "not an unreasonable explanation."

With respect to his investigation, Herrera stated: "[S]ome of the stuff ... does get into attorney-client privilege.  And being as general as I can, we conducted an investigation based-initially based on what Mr. Henn[a]gan had told us.  The investigation proved fruitless.... [B]asically, we're looking for this person that lent him the automobile.  We are not able to do that, and Mr. Henn[a]gan testified, which is not part of attorney-client, that this man was a drug dealer.  I understand now we're unable to locate him.  I doubt if we had located him he would have come into court and admitted he was a drug dealer and lent Mr. Henn[a]gan his car.  I think it's entirely reasonable it could have happened [the way defendant claimed].... I still believe that to be a reasonable scenario.  Mr. Henn[a]gan is a victim of his drug abuse...."

Herrera added that defendant wanted his "friend" to testify to confirm defendant's story that he was going to visit a friend on his way home in the "loaned" car.  But Herrera claimed that "that information did come to us late" and opined "it was not necessary to call" the friend.

Herrera also said that there was no dispute that defendant's bike had a flat tire since defendant testified that it did, and the officer could not recall.  He added: "The fact is the bicycle existed.  Nobody denied it, the bicycle existed.  My main point, as I think I argued, was that [he], you know, put his bicycle in the car.... I did not feel it was relevant, ... and there was nothing to contradict the fact it did not [sic] have a flat tire ."

Defendant then spoke.  Defendant complained about the minimal contacts that he had had with Herrera, Herrera's failure to move to set aside the strike, and defendant's failure to receive a trial on the strike.  Defendant stated: "I've always had a problem with ... my sentence being doubled because of that strike.  I took that conviction in my opinion, under duress and, umm, I've never ever conceded that I was guilty of that conviction...."

Defendant also claimed that had the officer who saw him riding his bike two days after the auto theft testified regarding that fact, then "maybe the outcome would have been different."

The court inquired about the validity of the strike-defendant's conviction for first degree burglary.  Defendant responded, "I was negative to any fingerprints at that particular 459."  He complained that the judge then ordered him "to give the People fingerprints, and in all of a sudden, two weeks later, I'm now positive at the same burglary by the same fingerprint technician.  So I filed motions becoming pro per and filed motions, and I found out through filing discovery motions that there were no fingerprints. I

19

mean, no photographs taken of fingerprints at the scene of that residential burglary.  Therefore, what did they compare my fingerprints to?  So I was of the contention that the fingerprints used were manipulated by the People and by the technician to put me at the burglary in order just to make me take a plea bargain.  My fingerprints never were at the burglary.  I never did the burglary...."

The prosecutor informed the court that he had prosecuted the burglary case and remembered "the facts as well."  The prosecutor stated that latent prints had been lifted at the burglary scene but that defendant's file prints were "not of sufficient quality to make a comparison."  Therefore, the prosecutor filed a motion to obtain "major case prints," i.e., prints "obtained from all parts of the hands."  A positive match was then made from the major case prints.

The court noted that defendant pleaded no contest to residential burglary and could no longer contest the validity of the print evidence.  The court also found that Herrera's failure to ask it to strike the prior burglary conviction did not amount to ineffective assistance of counsel because "[i]t would have been futile, based on everything I know now...."

The court concluded: "To the extent that Mr. Henn[a]gan has articulated various complaints and issues in his documents that are a part of this record, I will make the finding that Mr. Herrera was not ineffective to any level that would require me to grant Mr. Henn[a]gan a new trial.  Mr. Henn[a]gan made his decision to take the stand and testify.  I thought he articulated what he wanted to very well.  He can be very articulate.  He gave his reasons for why he ran from the stolen car, and he had corroboration for some of that, among other things, the bicycle that the officer conceded was in the car, and the whole issue turned on whether or not, number one, the car was stolen, which was [not] in dispute, and whether Mr. Henn[a]gan had knowledge that the car was stolen."

* * *

1. Adequacy of Counsel's Investigation

Defendant complains about the adequacy of his counsel's investigation, but his counsel explained at the hearing that he had conducted an investigation based on what defendant had told him, but that the investigation "proved fruitless" because he could not find the person who lent defendant the automobile, and doubted if that person-a drug dealer-would have cooperated in any event.  He also explained that defendant's testimony that he was looking for a friend on the day of his arrest was information that came too late.  Finally, he explained that additional evidence that defendant's bicycle had had a flat tire was unnecessary since defendant had

testified that it did, and no one had denied that defendant had a
bicycle, which had been found in the stolen car.

2. Counsel's Development of a Defense Strategy

Defendant also complains on appeal about his counsel's failure to
develop a defense strategy, but does not explain this point in his
brief so that we can address it.  "To the extent defendant
perfunctorily asserts ... claims, without development ..., they are
not properly made." (People v. Turner (1994) 8 Cal.4th 137, 214,
fn. 19, 32 Cal. Rper.2d 762, 878 P.2d 521.)

In any event, the only defense strategy to which defendant referred
at the hearing was the need to call an officer who saw him on his
bicycle two days after the car was stolen.  But this testimony would
have had no relevance as to whether defendant engaged in vehicle
theft, that is, whether he took or drove a vehicle with the requisite
intent without the consent of the owner, after that encounter.  And
even if defendant had stolen the car before the encounter, it would
not have precluded him from using his bicycle during the days
immediately following the theft to avoid detection while police
would no doubt be looking for the vehicle.

We also note that in his letter dated February 5, 2000 to the court,
defendant's complaint concerning his counsel's failure to develop a
defense strategy was based on his counsel's failure to present the
jacket with the cocaine pipe, the bicycle tire, and the baggie found
in the stolen car, instead of having defendant take the stand.  But
counsel explained at the hearing that he needed defendant to take
the stand in order to explain that he was running from the officer
on the night of his arrest because he was in possession of cocaine,
not because he had a stolen vehicle.  The court did not abuse its
discretion in finding that defense counsel was not ineffective by
reason of his conclusion that defendant had to testify in order to
effectively present his justification for fleeing from police.
Further, we note that evidence of the jacket, the cocaine pipe, and
the bicycle tire had already been introduced by the prosecution.

(Opinion at 6-16.)

        The California courts' rejection of petitioner's claim that his trial counsel

rendered ineffective assistance because of his failure to prepare and investigate is not contrary to

or an unreasonable application of Strickland and should not be set aside.  Even assuming

arguendo that counsel's failure to investigate potential defense witnesses was outside "the wide

range of professionally competent assistance," petitioner has failed to demonstrate how a more

thorough investigation would have led to a different outcome.  Petitioner's contention that further

1   investigation by counsel may have uncovered exculpatory evidence, without more specificity, is

2   insufficient to establish prejudice.  See Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997)

3   (petitioner's ineffective assistance claim rejected where he presented no evidence concerning

4   what counsel would have found had he investigated further, or what lengthier preparation would

5   have accomplished); United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no

6   ineffective assistance because of counsel's failure to call a witness where, among other things,

7   there was no evidence in the record that the witness would testify); United States v. Berry, 814

8   F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of ineffectiveness

9   claim because he offered no indication of what potential witnesses would have testified to or how

10  their testimony might have changed the outcome of the hearing).

11        Although petitioner speculates that further investigation of possible defense

12  witnesses would have been helpful, he fails to describe the specific nature of their testimony or to

13  demonstrate that they would have been willing to testify as expected.  Petitioner's general and

14  unspecific allegations in this regard are insufficient to establish ineffective assistance of counsel.

15  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995)  (conclusory allegations cannot support

16  habeas corpus relief).  There is also no evidence before the court that any failure by trial counsel

17  to communicate with his client prejudiced petitioner's case or that additional interaction between

18  petitioner and his trial counsel would have led to a different outcome at trial.  For all of these

19  reasons, petitioner is not entitled to relief on this claim

20                    h.  Right to be Present

21        Petitioner's next claim is that his trial counsel rendered ineffective assistance of

22  counsel by waiving petitioner's right to be present at a read-back of testimony during jury

23  deliberations.  (Pet. at 6A.)  Petitioner briefly explains:

24  /////

25  /////

26  /////

1         During jury deliberations, the jury requested readback of which
         trial counsel failed to inform petitioner, waiving petitioner's right
2         to be present during the readback of testimony, absent prior
         consultation with petitioner.

3

4  (Id.)  Petitioner does not elaborate on this claim in his traverse.

5         Petitioner raised this claim in his December 24, 2003 petition for a writ of habeas

6  corpus filed in the Sacramento County Superior Court.  That court rejected the claim, reasoning

7  as follows:

8         Petitioner next claims that the trial court erred in allowing trial
         counsel to waive petitioner's presence at the readback of testimony
9         at trial.  The claim is barred by Clark, and petitioner fails to show
         that an exception to the bar applies.  The claim is also barred by
10        Dixon, and petitioner fails to show any exception to that bar.
         Regardless, the claim fails on its merits, as a defendant has no right
11        to be personally present at a readback.  (See People v. Horton
         (1995) 11 Cal.4th 1068, 1122).  As such, the claim fails in any
12        event, under Bower.

13  (Lodged Doc. 23 at consecutive p. 5-6.)

14         Respondent advises the court that he is unable to find evidence that the jury

15  requested a read-back of testimony in this case.  (Answer at 43.)  However, the record reflects

16  that petitioner's jury made the following written request during their deliberations:

17         (1) Mr. Hennagan's testimony relating to why he requested to use
         the car.
18
         (2) Mr. Hennagan's testimony regarding the time he is ready to
19        leave the vacant house & "shorty" and "discovers" his tire is flat.

20  (CT at 106.)  The record also reflects that immediately after the jury retired to deliberate, the trial

21  court and counsel, with petitioner present, discussed the procedure in the event of a jury request

22  for a read-back of testimony, as follows:

23         THE COURT:  Is any [sic] objection to utilizing our normal
         process of if they request a readback, unless you request otherwise,
24        the court reporter will go in and read it, not just to the twelve, but
         to the two alternates, with the bailiff in attendance to assure there's
25        no deliberation?

26         MR. COSCA (prosecutor):  That's fine.

1    THE COURT:  That's agreed?

2    MR. HERRERA (petitioner's trial counsel):  Yes, Your Honor.

3    MR. COSCA:  That's fine.

4    THE COURT:  Okay.  Defendant can be returned to the holding
     area.

5

6    (RT at 306.)  Consistent with this agreement, there is no record in the reporter's transcript of any

7    response by the trial court to the jury's request for a read-back of testimony.

8         Under federal law, a criminal defendant charged with a felony offense has a

9    fundamental right to be present at every stage of the trial.  Illinois v. Allen, 397 U.S. 337, 338

10   (1970).  "A defendant is guaranteed the right to be present at any stage of the criminal proceeding

11   that is critical to its outcome if his presence would contribute to the fairness of the procedure."

12   Kentucky v. Stincer, 482 U.S. 730, 745 (1987).  This right derives from the Confrontation Clause

13   of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments.

14   United States v. Gagnon, 470 U.S. 522, 526 (1985).  However,"th[e] privilege of presence is not

15   guaranteed 'when presence would be useless, or the benefit but a shadow.'"  Stincer, 482 U.S. at

16   745 (quoting Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934)).  See also Gagnon, 470 U.S.

17   at 527 (defendants' absence did not violate the Due Process Clause where their presence was not

18   needed to "ensure fundamental fairness" and they could not have added to or gained from being

19   present at the conference).  The right to be present, like many other constitutional rights, may be

20   waived.  See Gagnon, 470 U.S. at 529; Taylor v. United States, 414 U.S. 17, 19-20 (1973).

21        The United States Supreme Court "has never addressed whether readback of

22   testimony to a jury is a critical stage[ ] of the trial triggering a criminal defendant's fundamental

23   right to be present."  La Crosse v. Kernan, 244 F.3d 702, 708 (9th Cir. 2001) (internal quotation

24   marks omitted).  However, in the Ninth Circuit, a defendant generally has a constitutionally

25   protected right to be present during any read-back of testimony.  See Turner v. Marshall, 63 F.3d

26   807, 814 (9th Cir.1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677, 685 (9th

Cir.1995); United States v. Kupau, 781 F.2d 740, 743 (9th Cir.1986).  The defendant must personally waive his right to be present; waiver by counsel is insufficient.  Turner, 63 F.3d at 815; Kupau, 781 F.2d at 743; see also Lugo v. Terhune, No. 07-16031, 2008 WL 1970930, *1 (9th Cir. May 7, 2008).[7]

As set forth above, the trial court specifically asked the parties, in petitioner's presence, whether they agreed to a procedure whereby any read-back of testimony would be handled outside of their presence.  All parties agreed to this procedure, and petitioner did not raise any objection thereto.  Although petitioner was not asked directly whether he agreed to waive his right to be present during any read-back of testimony, it is clear that he did not object to counsel's waiver on his behalf.  However, even assuming arguendo that petitioner's trial counsel was deficient in waiving petitioner's right to be present at the read-back of testimony to the jury, petitioner has failed to demonstrate any prejudice flowing therefrom.  The record before this court contains no indication of anything about the actual read-back of testimony that could have prejudiced petitioner in his absence.  Of course, petitioner must demonstrate a "'substantial and injurious effect or influence'" flowing from constitutional trial errors.  See Hegler v. Borg, 50 F.3d 1472, 1477 (9th Cir.1995) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  See also Lugo, 2008 WL 1970930 at *1 (holding that although there was error in failing to obtain the defendant's waiver of his presence at a read-back, "in the absence of a showing of prejudice, the conviction must stand").  He has failed to do so here.  In the absence of any showing of prejudice, petitioner's claim must be rejected.

i. Failure to Object to Dual Use of Facts at Sentencing

Petitioner's next claim is that his trial counsel rendered ineffective assistance by "failing to object to the sentencing court's use of dual facts to impose the upper term."  (Pet. at 6A.)  Petitioner raised this claim for the first time in his December 24, 2003 petition for a writ of

---

[7] Citation of this unpublished disposition by the Ninth Circuit Court of Appeals is appropriate pursuant to Fed. R. App. P. 32.1 and U.S. Ct. of App. 9th Cir. Rule 36-3(b).

1    habeas corpus filed in the Sacramento County Superior Court.  That court rejected the claim on

2    procedural grounds and on the merits, reasoning as follows:

3              Petitioner next claims that trial counsel was ineffective in failing to
               object to the sentencing court's use of "dual facts" in imposing the
4              upper term.  The claim is barred by Clark, and petitioner fails to
               show that an exception to the bar applies.  Regardless, the claim
5              fails on its merits, as the trial court viewed his entire past record,
               and not just the two prior convictions that were enhancing his
6              sentence, as aggravating, as well as that he was on probation at the
               time and was not performing satisfactorily on that probation, to
7              justify the imposition of the upper term.  There was nothing to
               object to, therefore the claim fails under Strickland and Bower, in
8              any event.

9    (Lodged Doc. 23 at consecutive p. 6.)

10             The decision of the Sacramento County Superior Court that petitioner's trial

11   counsel had "nothing to object to" with regard to the factors relied upon in sentencing petitioner

12   to the upper term is not contrary to or an unreasonable application of Strickland.  Accordingly,

13   petitioner is not entitled to relief on this claim.

14                       j.  Failure to Object to Sentencing Error

15             Petitioner claims that his trial counsel rendered ineffective assistance by failing to

16   object when the trial court did not mention one of the prior conviction allegations while imposing

17   petitioner's sentence.  Petitioner explains:

18             The sentencing court failed to properly orally pronounce sentence
               so as to reflect the court's determination on the matter.  The
19             sentencing court failed to mention the prior conviction alleged
               pursuant to Penal Code § 666.5.  The record is silent in the
20             sentencing court orally making a finding relative to the prior
               conviction alleged pursuant to Penal Code § 666.5.
21

22   (Pet. at 6B.)  Petitioner raised this claim in petition for a writ of habeas corpus filed on October

23   3, 2003, in the Sacramento County Superior Court.  (Lodged Doc. 20.)  That court denied relief

24   with respect to this claim, reasoning as follows:

25             Petitioner next claims that the doubling of the upper term on Count
               1 was unlawful because the sentencing court failed to state the
26             statute authorizing that doubling at the time of its imposition, and

                                              26

the court failed to state that the upper term before doubling was 4
years because petitioner had a prior theft conviction leading to that
upper term under Penal Code § 666.5.  He also claims that
doubling the sentence for Count 3 was unlawful because, again, the
sentencing court failed to state the statute authorizing that doubling
at the time of its imposition.

The court's file for Case No. 03F08508 contains sufficient
documentation to show that petitioner was, in fact, convicted of
vehicle theft under Veh. Code § 10851(a) and receiving stolen
property under Penal Code § 496(a), that one "strike prior" was
found true pursuant to Penal Code §§ 667(b) - (i) and 1170.12, and
that a prior vehicle theft conviction was found true, for purposes of
Penal Code § 666.5.  There was no error in the pronouncement of
sentence.  If petitioner had an objection to any failure to state each
penal statute under which the sentence was being imposed, at the
time of the imposition, petitioner should have made the objection
then.  As it stands, because the prior theft conviction was found
true, Penal Code § 666.5 required the triad that applied to the
sentence that was imposed for the Veh. Code § 10851 offense, and
because the "strike" was found true, Penal Code §§ 667(b) - (i) and
1170.12 required that sentence to be doubled.  As the trial court
had discretion to impose the upper term of 4 years, that upper term
was properly imposed and properly doubled.  As for the Penal
Code § 496(a) offense, again the "strike" was found true, thus the
sentence for that offense was properly doubled, then properly
stayed under Penal Code § 654.  Petitioner demonstrates nothing
unlawful about his sentence, requiring denial of this claim (Bower,
supra).

(Lodged Doc. 21 at 1-2.)

Petitioner also raised this claim in his December 24, 2003 petition for a writ of

habeas corpus filed in the Sacramento County Superior Court.  That court also rejected the claim,

reasoning as follows:

Petitioner next claims that trial counsel was ineffective in failing to
object to the sentencing court's improper rendition of sentence.
The claim is barred by Clark and petitioner fails to show that an
exception to the bar applies.  Regardless, the claim fails on its
merits, as petitioner fails to establish that the rendition of sentence
had been improper.  There was nothing to object to, therefore the
claim fails under Strickland and Bower, in any event.

(Lodged Doc. 23 at consecutive p. 6.)

As described above, the state court found that petitioner's sentence was correctly

imposed pursuant to California law.  The state court's conclusion in this regard may not be set

27

aside in this federal habeas corpus proceeding.  See Estelle, 502 U.S. at 67-68 (a federal writ is not available for alleged error in the interpretation or application of state law); Wisconsin v. Mitchell, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute."); Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (federal courts are "bound by a state court's construction of its own penal statutes"); Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989) (a federal habeas court must defer to the state court's construction of its own penal code unless its interpretation is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation").  Because there was no error in the imposition of his sentence, petitioner has failed to demonstrate that his trial counsel's failure to object to the sentencing court's rendition of the sentence resulted in prejudice.  Put another way, petitioner has failed to show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Accordingly, he is not entitled to relief on this claim.

k.  Decision Whether to Testify at Trial

Petitioner's next claim is that his trial counsel rendered ineffective assistance by insisting that petitioner testify at trial, failing to advise petitioner of his right not to testify, and failing to object when the trial court did not advise petitioner of his right not to testify.  (Pet. at 6B.)  In this regard, petitioner explains:

> Prior to testifying trial counsel failed to advise petitioner of his constitutional right not to testify.  Trial counsel insisted that petitioner testify against petitioner's will.  In addressing the sentencing court, trial counsel stated, "Mr. Hennagan did mention that yesterday in our conversation.  He was unhappy with me for having, um, not – well, for having his [sic] testify in the sense that I told his [sic] he had to testify, it was my opinion that he had to testify, and that was true."

(Id.)  In the traverse, petitioner claims that his trial counsel advised him to testify only because he had failed to develop a viable defense strategy.  (Traverse at 67.)  He argues, "trial counsel's reliance on Petitioner testifying was encouraged to cover-up his own ineptness."  (Id. at 68.)

1    Through numerous motions filed in the trial court, in the form of letters, petitioner

2  challenged his trial counsel's decision to have him take the stand in his own defense.  These

3  complaints received a hearing after the verdict was rendered.  (CT at 118-217; RT at 320-36.)

4  With regard to petitioner's claim that he was forced by his counsel to testify, the trial court ruled

5  as follows:

6           I will make the finding that Mr. Herrera was not ineffective to any
            level that would require me to grant Mr. Hennagan a new trial.  Mr.
7           Hennagan made his decision to take the stand and testify.  I thought
            he articulated what he wanted to very well.  He can be very
8           articulate.  He gave his reasons for why he ran from the stolen car,
            and he had corroboration for some of that, among other things, the
9           bicycle that the officer conceded was in the car, and the whole
            issue turned on whether or not, number one, the car was stolen,
10          which was in dispute, and whether Mr. Hennagan had knowledge
            that the car was stolen.

11

12  (RT at 336.)  The California Court of Appeal agreed with the trial court's ruling, stating as

13  follows:

14          [C]ounsel explained at the hearing that the needed defendant to
            take the stand in order to explain that he was running from the
15          officer on the night of his arrest because he was in possession of
            cocaine, not because he had a stolen vehicle.  The court did not
16          abuse its discretion in finding that defense counsel was not
            ineffective by reason of his conclusion that defendant had to testify
17          in order to effectively present his justification for fleeing from
            police.

18

19  (Lodged Doc. 3 at 16.)

20          In essence, petitioner is claiming that his trial counsel rendered ineffective

21  assistance by proceeding with a defense strategy that involved using petitioner's testimony to

22  explain why he evaded the police.  Petitioner's counsel explained to the trial court his reason for

23  proceeding in this fashion as follows:

24          It was my opinion that despite the outcome it would still be my
            opinion he had to testify, because he was charged and the facts
25          were he was in a stolen vehicle and he did not directly pull over –
            well, as a matter of fact, when he got out of the car he ran from the
26          officer.  And it was always my belief that someone had to explain

29

1    the reason he was running from the officer was because he knew he
     was in a stolen vehicle and he did get on the stand and say the
2    reason he ran from the officer was trying to dispose of the narcotics
     he had on him, which in light of the circumstances, I felt was not
3    an unreasonable explanation.  He was making complaints over the
     fact he was subject to such a strong cross-examination and I tried
4    to protect him from that.

5    (RT at 322-23.)

6          Trial counsel's tactical decision to attempt to provide an explanation for

7    petitioner's suspicious actions that would exculpate him of the charged offenses was certainly

8    reasonable under the circumstances of this case.  Accordingly, it cannot provide the basis for

9    habeas corpus relief.  See Strickland, 466 U.S. at 690 (trial counsel's reasonable tactical

10   decisions are "virtually unchallengeable").  Further, as explained by the United States Supreme

11   Court:

12         Judicial scrutiny of counsel's performance must be highly
           deferential.  It is all too tempting for a defendant to second-guess
13         counsel's assistance after conviction or adverse sentence, and it is
           all too easy for a court, examining counsel's defense after it has
14         proved unsuccessful, to conclude that a particular act or omission
           of counsel was unreasonable.  (citation omitted.)  A fair assessment
15         of attorney performance requires that every effort be made to
           eliminate the distorting effects of hindsight, to reconstruct the
16         circumstances of counsel's challenged conduct, and to evaluate the
           conduct from counsel's perspective at the time.

17

18   Id. at 689.  In light of the circumstances facing petitioner's counsel, the trial tactics employed

19   were well within the wide range of reasonable professional assistance.

20         Petitioner frames this claim as one of ineffective assistance because of his trial

21   counsel's failure to advise him that he had the right to remain silent.  Assuming arguendo that

22   petitioner's trial counsel improperly failed to notify petitioner that he had this right, petitioner has

23   failed to demonstrate prejudice.  There is no evidence in the record, and petitioner does not

24   assert, that he would have refused to testify at his trial if he had been advised of his right to

25   remain silent.  Further, there is no evidence that the result of the proceedings would have been

26   different if petitioner had decided not to take the stand.  Because of petitioner's failure to

1  establish prejudice resulting from the actions of his trial counsel, he is not entitled to relief on

2  this claim.

3                              l.  Failure to File a Motion

4          Petitioner claims that his trial counsel rendered ineffective assistance by not filing

5  a motion for new trial on his behalf pursuant to California Penal Code § 1181(6) based on the

6  failure of the police to preserve the stolen vehicle.[8]  Petitioner argues:

7              The fact that law enforcement failed to preserve the motor vehicle
               in violation of vehicle code § 6171 denied petitioner due process of
8              law.  Trial counsel was fully aware that law enforcement failed to
               comply with Penal Code § 1407 and the released vehicle to a third
9              party broke the chain of custody of the motor vehicle evidence.
               The jury was never shown a photograph of the motor vehicle and
10             was presented no tangible evidence of the motor vehicle's
               existence.

11

12 (Pet. at 6B.)

13         Petitioner presented this claim for the first time in his December 24, 2003 petition

14 for a writ of habeas corpus filed in the Sacramento County Superior Court.  That court rejected

15 petitioner's arguments, reasoning as follows:

16             Petitioner next claims that trial counsel was ineffective in failing to
               file a motion for a new trial under Penal Code § 1181(6) on the
17             ground that the verdict was contrary to the law and the evidence
               presented.  The claim is barred by Clark, and petitioner fails to
18             show that an exception to the bar applies.  The claim is also
               meritless, as petitioner fails to show that the verdict was contrary to
19             the law and the evidence presented.  The claim therefore fails, in
               any event, under Strickland and Bower.

20

21 (Lodged Doc. 23 at consecutive p. 6.)

22 /////

23 _____

24     [8]  California Penal Code § 1181(6) provides that a trial court may grant a motion for new
   trial "[w]hen the verdict or finding is contrary to law or evidence, but if the evidence shows the
25 defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a
   lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict,
26 finding or judgment accordingly without granting or ordering a new trial, and this power shall
   extend to any court to which the cause may be appealed."

                                        31

1    Petitioner has failed to demonstrate prejudice with respect to this claim.  The

2   evidence supporting his conviction was not insufficient because the vehicle, or a photograph of

3   the vehicle, was not produced at trial.  Petitioner's trial counsel was not ineffective in failing to

4   make a futile motion for new trial on the ground that the vehicle was not presented at the trial or

5   made available to the defense.  Jones, 231 F.3d at 1239 n.8; Rupe, 93 F.3d at 1445 (failure to

6   raise a meritless argument does not constitute ineffective assistance).  Accordingly, petitioner is

7   not entitled to relief on this claim.

8       B.  Trial Court Error

9    Petitioner raises two claims of trial court error.  The court will evaluate these

10   claims in turn below.

11        1.  Admission of Evidence of Petitioner's Prior Conviction for Vehicle Theft

12    Petitioner claims that the trial court violated his right to a fair trial when it allowed

13   the jury to hear evidence concerning his prior conviction for vehicle theft.  (Pet. at 6A.)

14   Petitioner contends as follows:

15         The trial court initially ruled to admit petitioner's prior vehicle
           theft conviction, sanitized revealing to the jury that petitioner had
16         suffered a theft related conviction.  However, during petitioner's
           testimony, the trial court recessed the proceedings and ruled to
17         admit petitioner's prior vehicle theft conviction, unsanitized.  The
           admission of petitioner's prior vehicle theft conviction unsanitized
18         was abuse of the trial court's discretion and prejudiced petitioner
           before the jury.
19

20   (Id.)  In his traverse, petitioner claims that the trial court's ruling regarding the admission into

21   evidence of the prior conviction "was abuse of discretion by the trial court in that the prior was

22   'substantially similar' to the conduct for which Petitioner was in trial for and severely prejudiced

23   Petitioner before the jury."  (Traverse at 49.)  Petitioner argues that the trial court "had available

24   to it petitioner's prior burglary conviction" to impeach his credibility and did not need to

25   impeach him with his prior conviction for auto theft.  (Id. at 52.)  He contends that "the trial court

26   /////

32

1    sabotaged Petitioner's testimony with the admission of the prior vehicle theft conviction." (Id. at

2    55.)

3              As described above, the charging document alleged that petitioner had suffered a

4    prior conviction for vehicle theft and a prior "strike" conviction for first degree burglary. (CT at

5    23-24.) Petitioner had also suffered an uncharged prior conviction for receiving stolen property.

6    (RT at 5.) Before trial commenced, the trial court ruled that these three prior convictions could

7    be admitted into evidence for impeachment purposes, "specifying the first degree burglary

8    conviction as such, and specifying the receiving stolen property and [vehicle theft] convictions as

9    felony theft-related convictions." (Id. at 7-8.) In other words, the trial court "sanitized" the prior

10   convictions for vehicle theft and receiving stolen property so that the jury would learn only that

11   the convictions were "theft-related" and would not hear that any conviction involved a vehicle.

12             Petitioner's trial counsel requested that the trial court also exclude evidence of

13   petitioner's statement to the arresting officer that he attempted to flee because he knew he had a

14   "bad record with previous stolen vehicle arrests." (Id. at 9.) Defense counsel argued that this

15   statement "about the previous stolen vehicle arrests . . . would be unduly prejudicial." (Id.) The

16   trial court ruled that it would "disallow in the DA's case in chief any evidence concerning the

17   statement, period, whether it's incriminating or exculpating, prejudicial or not, so that the jury

18   won't hear in the DA's case in chief the defendant's explanation of why he ran." (Id. at 12.) The

19   court further ruled that "if the defendant testifies, and depending upon what he says in his case in

20   chief, will dictate whether or not I would reconsider my ruling and allow all the statements in or

21   not for any purpose." (Id.)

22             On direct examination, petitioner testified that he took evasive action after he

23   spotted the police officer because he knew he had drugs in his vehicle. (Id. at 156-57.) At that

24   point, the trial court called a recess for the purpose of revisiting whether to admit evidence of

25   petitioner's statement to the arresting officer that he attempted to flee because he knew he had a

26   prior arrest for vehicle theft. (Id. at 157.) After hearing argument, the trial court ruled that the

                                                    33

prosecution could question petitioner about this alleged statement made to the arresting officer. (Id. at 159-60.) The court reasoned that "the statement arguably is inconsistent with some of what the defendant has testified to concerning his reason for being worried about being stopped and whether or not, among other things, it had anything to do with drugs as opposed to other reasons." (Id. at 160.) The court also noted that petitioner had already testified on direct examination that he had previously suffered three "felony theft offenses" in 1988 and that petitioner's statement to the police officer would clarify that his arrest for auto theft resulted in one of the three convictions he had previously suffered. (Id. at 152, 160.) The trial court explained:

> the fact that he – one of his theft-related convictions in fact was for auto theft, makes – rounds out the information for the jury that not only did he admit being arrested, but in fact, he had been convicted of auto theft. And that's relevant, number one, for his credibility, the felony auto theft conviction. And it's relevant as to putting that together with his acknowledgment that he had been arrested for such before.
>
> That much coming out to the jury persuades me that it's appropriate for the DA to impeach him with the jury knowing not only had he been arrested for that, but he has been convicted for that.
>
> In my discretion I could allow – and it's my position to not commit error by allowing all of his prior convictions that reflect on moral turpitude and credibility to come in unsanitized. I chose to allow them to be sanitized out of an abundance of caution. I am unsanitizing the auto theft conviction because the jury will now be hearing that he was arrested for that.
>
> He acknowledged that much to the officer. For whatever reason he chose not to acknowledge to the officer that not only was he arrested for it, he was convicted of it.
>
> * * *
>
> It's coming in as relevant to lend more meaning and credibility to the fact of his making such a statement to the officer which, among other things, didn't apparently include any reference to drugs, but apparently focused on his record.
>
> And if, among other things, I don't allow the fact of the conviction in, what will be left with the jury is the false understanding that he

34

only suffered arrests for auto theft, when in fact we know he
suffered a conviction for it.

And a conviction, number one, yes, can be utilized in argument for
his credibility, but it also can be commented on that he knew not
only that he had previously been arrested for auto theft, but should
have known and acknowledged to the officer that he's been
convicted of auto theft.

* * *

And now I'm allowing the statement to come in because it's
relevant arguably for impeachment of what the defendant's
testimony offers, and persuades me in my discretion now that – I
don't want to leave the impression with the jury, according to the
defendant's testimony, that he's only suffered an arrest for auto
theft.  He, in fact we know, has suffered a conviction for that, and
we in fact know that one of his theft-related convictions that I
previously sanitized was for auto theft.

Now the jury is entitled to know and the DA to argue concerning
his credibility that not only had he been arrested for auto theft, he'd
been convicted of that as a felony offense, and can argue that
concerning his credibility.  And if I need to instruct the jury that
they can consider it for no other purpose, I'll do that.

But it has this other relevancy concerning his statement to the
police.  Among other things, the question could be asked of him,
you told the officer that you had – you were worried because you'd
previously been arrested for auto theft; isn't that correct?

Now I don't know whether he'll say yes, that's correct, or no, that's
not correct.  He can be asked by the District Attorney, but in fact,

you not only have been arrested for auto theft, you have been
convicted of that.

* * *

I'm not using it just to support the argument that he lied to the jury.
I'm using it, as I tried to explain to you, that if I don't allow the
fact of the conviction in to explain one of his felony convictions for
impeachment purposes, the jury is left with the impression that,
according to his testimony, he's only been arrested for that, and
therefore, he must – the assumption they could draw is that's all
that's ever happened concerning auto theft, that he's been arrested
for it.

/////

/////

> We know that's not true.  And I feel the jury should be entitled to
> know concerning his credibility that his felony convictions include
> first degree burglary and auto theft.

(Id. at 161-65.)

Petitioner argues that the trial court's decision to admit his statements to the arresting officer and his "unsanitized" prior conviction for vehicle theft violated state evidentiary rules, was an "abuse of discretion," and denied him the right to due process and a fair trial.  (Pet. at 6A; Traverse at 48, 50.)  He also complains that his statement to the arresting officer was "not written down while fresh in [the officer's] memory and was simply based on recollections recorded hours later."  (Traverse at 55.)  Petitioner argues that "other less prejudicial prior convictions were available which bore more directly on Petitioner's credibility."  (Id.)

As explained above, a federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085.  Absent some federal constitutional violation, a violation of state law does not provide a basis for habeas relief.  Estelle, 502 U.S. at 67-68.  Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process.  Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  "Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process."  Jammal, 926 F.2d at 920.

In federal court, "evidence of a prior conviction may be admitted for impeachment purposes if the probative value out-weighs the prejudicial effect of admission."  United States v. Martinez-Martinez, 369 F.3d 1076, 1088 (9th Cir. 2004).  When balancing the probative value of evidence of a defendant's prior convictions against the evidence's prejudicial effect, a reviewing court is to consider: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime  and the charged crime; (4) the importance of the defendant's testimony; and, (5) the centrality of the

1   defendant's credibility." United States v. Browne, 829 F.2d 760, 762-63 (9th Cir. 1987). See

2   also United States v. Jimenez, 214 F.3d 1095, 1098 (9th Cir. 2000).  If a prior conviction is

3   found to serve a proper impeachment purpose, it may be admitted despite its similarity to the

4   offense at issue.  United States v. Martinez-Martinez, 369 F.3d 1076, 1088 (9th Cir. 2004)

5   United States v. Hursh, 217 F.3d 761, 768 (9th Cir. 2000); Browne, 829 F.2d at 763; Cisneros v.

6   Runnels, No. Civ. S-03-0857, 2007 WL 809990, *5 at n.3 (E.D. Cal. Mar. 15, 2007).

7             Petitioner has failed to demonstrate that his right to a fair trial was violated by the

8   trial court's decision to allow him to be impeached with evidence of his prior conviction for

9   vehicle theft.  As explained above, the trial judge originally agreed to sanitize this prior

10  conviction by allowing it to be referred to only as a "theft-related" conviction.  The judge

11  appropriately changed his mind when petitioner testified on direct examination in such a way that

12  the jury might be misled as to the truth of his testimony and the nature of his prior criminal

13  history.  As the trial judge explained, petitioner's statement to the arresting officer regarding the

14  reason for his evasive actions when confronted by the officer was admitted in order to clarify

15  petitioner's testimony and to enable the jury to evaluate the credibility of his defense.  Here,

16  petitioner's prior conviction was certainly similar to the charges upon which he was being tried.

17  Nonetheless, in light of the importance of petitioner's trial testimony and the fact that the

18  credibility of that testimony was the central issue in determining his guilt or innocence, any

19  potential prejudicial effect of disclosing that petitioner had a prior conviction for vehicle theft

20  was far outweighed by its probative value.

21            In this regard, "[i]t is clear that criminal defendants are not entitled to a false aura

22  of veracity when they take the stand," and "when accused elects to become a witness and testify

23  in his own behalf, 'his credibility may be impeached, his testimony may be assailed, and is to be

24  weighed as that of any other witness.'"  United States v. Portillo, 633 F.2d 1313, 1322 (9th Cir.

25  1980) (quoting Reagan v. United States, 157 U.S. 301, 305 (1895)).  The court also notes that the

26  jury was specifically instructed that evidence of  petitioner's prior conviction could not be

considered as evidence that he had a general disposition to commit crimes or that he committed

the charged crimes.  (CT at 50.)  Under these circumstances, the state court's rejection of

petitioner's federal due process claim was neither contrary to, nor an unreasonable application of

controlling principles of federal law.  Accordingly, petitioner is not entitled to habeas relief on

this claim.

### 2. Denial of Petitioner's Motion for New Trial

Petitioner's claim entitled "Ground 14" in full is stated as follows:

> Motion for a new trial may be made on the grounds of ineffective
> assistance of counsel.
>
> Supporting Facts:  Prior to judgment and sentencing, petitioner
> submitted a motion for a new trial based on the ineffectiveness of
> trial counsel.  The trial court denied petitioner's motion stating "I
> will make a finding that Mr. Herrera was not ineffective to any
> level that would require me to grant Mr. Hennagan a new trial."

(Pet. at 6B.)

This court will construe petitioner's allegations as a claim that the trial court's

denial of his motion for new trial on the grounds of ineffective assistance of counsel violated

petitioner's right to due process.  As so construed, the claim should be rejected.  For the reasons

explained above, this court has concluded that petitioner's trial counsel did not render ineffective

assistance.  The court has also reviewed the state court record and does not find any federal

constitutional error in connection with the trial court's denial of petitioner's motion for new trial.

Accordingly, petitioner is not entitled to relief on this claim.

### C. Ineffective Assistance of Appellate Counsel

Petitioner claims that his appellate counsel  rendered ineffective assistance when

he failed to raise the following issues:  (1) petitioner's trial counsel rendered ineffective

assistance when he did not advise petitioner of his "Boykin Tahl [sic] rights" prior to his

admission of the prior conviction allegation; (2) the trial court erred when it admitted evidence of

petitioner's "unsanitized" prior conviction on the charge of vehicle theft; and (3) petitioner's trial

1    counsel rendered ineffective assistance when he failed to advise petitioner that he did not have to

2    testify and failed to object when the trial court did not so advise petitioner.  (Pet. at 6B.)

3              The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

4    v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

5    However, an indigent defendant "does not have a constitutional right to compel appointed

6    counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

7    professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

8    (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

9    ability of counsel to present the client's case in accord with counsel's professional evaluation

10   would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

11   Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

12   not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

13   meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

14   showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

15   to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

16   context, petitioner must show that, but for appellate counsel's errors, he probably would have

17   prevailed on appeal.  Id. at 1434 n.9.

18             Petitioner has failed to demonstrate prejudice with respect to these claims.  For the

19   reasons explained above, the appellate issues that petitioner suggests should have been raised on

20   his behalf are meritless.  Appellate counsel's decision to press only issues on appeal that he

21   believed, in his professional judgment, had more merit than the claims now suggested by

22   petitioner was "within the range of competence demanded of attorneys in criminal cases."

23   McMann v. Richardson, 397 U.S. 759, 771 (1970).  Accordingly, petitioner is not entitled to

24   habeas relief as to these claims.

25   /////

26   /////

CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 3, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
hennagan1900.hc

40